UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

EDUARDO V.M.,

           Petitioner,

      v.

WARDEN OF GOLDEN STATE ANNEX
ICE DETENTION FACILITY, et al.,

           Respondents.

No. 1:26-cv-00017-TLN-AC

A # 022-793-002

**ORDER**

This matter is before the Court on Petitioner Eduardo V.M.'s ("Petitioner") *pro se* request for injunctive relief (ECF No. 1), which the Court construed as a motion for temporary restraining order ("TRO") (ECF No. 4).[1]  Respondents filed an opposition.  (ECF No. 6.)  Petitioner filed a reply.  (ECF No. 18.)  For the reasons set forth below, the Court issues a TRO requiring Respondents to IMMEDIATELY RELEASE Petitioner.  Respondents are further ORDERED TO SHOW CAUSE why the Court should not grant the Petition for Writ of Habeas Corpus and enter judgment in favor of Petitioner.

///

---

[1]    Since Petitioner's initial filing of his habeas petition, the Court appointed counsel who is now enrolled in this case and filed a reply on behalf of Petitioner.  (ECF Nos. 9, 18.)

1

## I.    FACTUAL BACKGROUND

The instant action arises from Petitioner's allegedly unlawful detention.  (*See* ECF No. 1.)  Petitioner has resided in the United States for over 40 years.  (ECF No. 20-1 at 25.)  Petitioner is 75 years old and asserts he is in poor health with medical problems including osteoporosis.  (ECF No. 1 at 2; ECF No. 18 at 6.)  Petitioner's entire family resides in the United States including his children and grandchildren.  (ECF No. 1 at 2; ECF No. 20-1 at 15.)

In 1989, Petitioner was convicted for the offense of possession of cocaine base for sale and the former U.S. Immigration and Naturalization Service ("INS") issued him an Order to Show Cause and Notice of Hearing, charging him with inadmissibility under Immigration and Nationality Act ("INA") §§ 241(a)(2) and 241(a)(11).  (ECF No. 20-1 at 25–26.)  Petitioner was subsequently taken into immigration detention but was released on March 29, 1990 from custody on bond with an Order of Supervision.  (*Id.* at 26.)  While he was in detention, INS was unable to deport him back to Cuba because Cuba did not accept him.  (ECF No. 18 at 6.)  Petitioner was subsequently released and each year checked in with the immigration office.  (*Id.*)

In 2014, Petitioner was arrested for domestic violence and possession of a controlled substance charges.  (ECF No. 20-1 at 26; ECF No. 18 at 6.)  He was sentenced and placed on misdemeanor probation with 90 days jail, but he was released after serving 35 days.  (ECF No 18 at 6.)  Petitioner has not had any additional encounters with the police since his 2014 conviction.  (*Id.*)  On June 14, 2014, ICE released Petitioner on an Order of Supervision.  (ECF No. 20-1 at 26.)

On October 17, 2025, the U.S. Department of Homeland Security ("DHS") detained Petitioner when he reported to a routine check-in with the immigration office.  (*Id.* at 2.)  At the time of his detention, DHS served Petitioner with a Notice of Revocation of Release, which stated Petitioner's release was revoked because U.S. Immigration and Customs Enforcement ("ICE") had reviewed his file and determined that circumstances had changed in his case.  (ECF No. 20-1 at 1–2.)  On October 29, 2025, DHS served Petitioner a notice that it intended to remove Petitioner to Mexico.  (*Id.* at 3.)  On November 10, 2025, a DHS asylum officer interviewed Petitioner and found that Petitioner did not establish it was more likely than not that he would be

2

tortured in Mexico.  (*Id.* at 5.)

On January 5, 2026, Petitioner filed the instant Petition for Writ of Habeas Corpus, challenging the lawfulness of his civil detention and seeking immediate release. (*See* ECF No. 1.) On January 7, 2026, the Court issued an Order construing Petitioner's *pro se* request for injunctive relief as a motion for TRO and ordered Respondents to file a response.  (ECF No. 4.) In response, Respondents filed an opposition.  (ECF No. 6.)  Petitioner filed a reply.  (ECF No. 18.)

On March 3, 2026, the Court ordered Respondents to file relevant portions of Petitioner's A-File and any and all available records related to Petitioner's allegations, as Respondents failed to file these records as the Court previously ordered.  (ECF No. 19.)  Respondents then filed responsive records.  (ECF No. 20.)

## II.    STANDARD OF LAW

For a TRO, courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a TRO. *Id.* at 1134–35.

///

///

3

### III.   ANALYSIS

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

#### A.   Likelihood of Success on the Merits

Petitioner argues his continued detention violates due process because his removal is not reasonably foreseeable as required under *Zadvydas v. Davis*, 533 U.S. 678 (2001), ICE unlawfully revoked his release when it failed to follow its own regulations, and ICE's procedures relating to third-country removals are unconstitutional.  (ECF No. 1 at 13–18.)  The Court addresses the likelihood of success for each claim.

#### i.   *Prolonged Detention*

Petitioner argues he is likely to succeed on the merits of his Fifth Amendment Due Process claim pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001), because he can demonstrate he has been detained beyond the presumptively reasonable period of six months and it is not substantially likely that he will be removed in the reasonably foreseeable future.  (ECF No. 18 at 2–4.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas*, 533 U.S. at 693.  These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. 1231(a) ("§ 1231(a)") governs detention of a noncitizen after a final order of removal has been issued.  This statute provides that once a removal order is final, the Government must "remove the [noncitizen] from the United States within a period of 90 days."  8 U.S.C. § 1231(a)(1)(A).  During the initial 90-day removal period, the Government shall detain the noncitizen.  *Id.* § 1231(a)(2).  However, under § 1231(a)(6), a noncitizen may be detained for more than 90 days if the noncitizen has been ordered removed due to a criminal conviction.

In *Zadvydas*, the Supreme Court addressed how long a noncitizen may be detained pursuant to § 1231(a)(6).  533 U.S. 678.  The Supreme Court concluded that "once removal is no

longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Supreme Court recognized a presumptively reasonable six-month period of detention after a removal order has been issued, "[a]nd for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* at 701. If a noncitizen "provides a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* If the noncitizen meets this burden, the Government must "introduce evidence to refute that assertion." *Pelich v. INS*, 329 F.3d 1057, 1059 (9th Cir. 2003); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1082 (9th Cir. 2006) ("Given the unreasonable length of [petitioner's] detention, the unforseeability of his removal, and the failure of the government to rebut his showing that there is no significant likelihood of removal in the reasonably foreseeable future, the government's continued detention violates federal law[.]").

Courts considering whether removal is reasonably foreseeable "have generally focused on whether a petitioner has received, or will receive, travel documents that would make the petitioner's removal possible." *Akbarian v. Warden, et al.*, No. 5:25-CV-03584-ODW (AGRX), 2026 WL 127941, at *3 (C.D. Cal. Jan. 12, 2026) (citing *Min v. Santacruz*, No. 2:25-cv-10971-MEMF (ASx), 2025 WL 3295564, at *4 (C.D. Cal. Nov. 26, 2025) (finding that petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future because "[n]o travel documents have been applied for, let alone secured")); *see also Belach v. Marin*, No. 5:25-cv-03452-SPG (RAOx), 2026 WL 75920, at *4 (C.D. Cal. Jan. 5, 2026) (concluding petitioner "has shown good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future," as petitioner "lacks valid travel documentation" and "has been unable to obtain a Russian passport").

Here, as of the filing of his reply on March 11, 2026, Petitioner had been re-detained for a total of 4 months and 25 days, in addition to his initial detention of three years in New Orleans in

the 1990s following his removal order.[2]  (ECF No. 18 at 3, 6.)  The six-month period articulated in *Zadvydas* is cumulative, as "[s]everal courts have held that the six-month period does not reset when the government detains [a noncitizen] under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again."  *Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018) (citing cases); *see also Siguenza v. Moniz*, No. 25-CV-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) ("Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them.").  The Court finds Petitioner's cumulative detention period exceeds the six-month presumptively reasonable period.  *Zadvydas*, 533 U.S. at 701.

Further, Petitioner demonstrates "there is no significant likelihood of removal in the reasonably foreseeable future," and therefore raises serious questions about the lawfulness of his detention.  *Id.*  Petitioner asserts in his Petition that Cuba will not accept him, ICE "want[s] to send him to Mexico . . . [and] there is no significant likelihood that ICE will be able to remove him to Mexico."  (ECF No. 1 at 2.)  Further, Petitioner represented to his counsel that he was previously detained in the 1990s for more than two years and in that time Cuba never issued a travel document allowing the Government to carry out his removal order.  (ECF No. 18 at 3.)

As Petitioner provides evidence showing "a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to Respondents to "respond with evidence sufficient to rebut that showing."  *Zadvydas*, 533 U.S. at 701.  Respondents acknowledge this framework in the opposition brief, but only states that Petitioner is unlikely to succeed on the merits "because the statute authorizes ICE to detain

---

[2]    Petitioner does not provide any documentation to substantiate his claim that he was detained for three years in the 1990s.  The Form I-213 reflects that Petitioner was issued a final order of removal on June 1, 1990, but otherwise does not contain information on Petitioner's detention history.  (ECF No. 20-1 at 26.)  However, Petitioner raises his *Zadvydas* claim in his Petition and asserts a Fifth Amendment Due Process Clause Violation on the basis that he has been detained for longer than the presumptively reasonable six-month period.  (ECF No. 1 at 13.)  Respondents do not dispute Petitioner's assertion that he has he been detained for longer than six months in the opposition.  (*See* ECF No. 6.)  Accordingly, the Court finds — at a minimum — Petitioner's cumulative detention period exceeds the six-month presumptively reasonable period.

[Petitioner] as someone subject to a final removal order, to effectuate his removal." (ECF No. 6 at 2 (citing 8 U.S.C. § 1231).) On October 17, 2025, ICE provided Petitioner a Notice of Revocation of Release, which states in a conclusory fashion "there are changed circumstances in [his] case" and "ICE has determined there is a significant likelihood of removal in the reasonably foreseeable future." (ECF No. 20-1 at 1.) Courts in the Ninth Circuit "have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." *Nguyen v. Scott* (*Scott*), 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025). Respondents do not offer any specifics in the Notice of Revocation of Release nor in the opposition brief. (*Id.*; *see* ECF No. 6.) The Court therefore finds Respondents do not offer any evidence sufficient to rebut Petitioner's showing that there is no significant likelihood of removal in the reasonably foreseeable future.

Accordingly, as the "presumptively reasonable" detention period established in *Zadvydas* has passed and Petitioner sets forth information showing his removal is not reasonably foreseeable, the Court finds Petitioner establishes a likelihood of success on the merits of his Fifth Amendment Due Process Clause claim. *See Belach*, 2026 WL 75920, at *4.

ii.        *Revocation of Release*

Petitioner also establishes a likelihood of success on his claim that ICE unlawfully revoked his release. When a noncitizen has been released from immigration detention, certain ICE regulations govern how and when the agency may revoke that release and re-detain the noncitizen. *See* 8 C.F.R. §§ 241.13(i), 241.4(l) ("ICE Regulations"). These procedures protect important due process rights owed to noncitizens. *See Nguyen v. Hyde*, 788 F. Supp. 3d 144, 152 (D. Mass. 2025) (noting that 8 C.F.R. § 241.13(i) was "promulgated to protect a fundamental right derived from the Constitution").

"ICE, like any agency, 'has the duty to follow its own federal regulations.'" *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) (reversing dismissal of habeas petition where Board of Immigration Appeals failed to follow its own regulations). "Where an immigration 'regulation is promulgated to protect a fundamental

7

right derived from the Constitution or a federal statute,' like the opportunity to be heard, 'and [ICE] fails to adhere to it, the challenged [action] is invalid." *Rombot*, 296 F. Supp. 3d at 388 (quoting *Waldron v. I.N.S.*, 17 F.3d 511, 518 (2d Cir. 1993)); *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that ICE Regulations were followed . . . [petitioner's] re-detainment was unlawful.").

Petitioner's revocation of release is governed by 8 C.F.R § 241.13(i). (*See* ECF No. 1 at 17–18.)   In considering Petitioner's claim that ICE failed to comply with ICE Regulations thereby violating due process, the Court assesses 8 C.F.R § 241.13(i)(2) (determination requirements) and 8 C.F.R § 241.13(i)(3) (procedures) in turn.

a)    *Determination to Revoke Release Under 8 C.F.R. § 241.13(i)(2)*

Under the ICE Regulations governing revocation of release, ICE may re-detain noncitizens "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The "on account of" language means that the "changed circumstances" are a prerequisite to revocation. *Id.*; *see also Tran v. Noem*, No. 25-cv-2391, 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) ("§ 241.13(i)(2) requires that this determination is made *before* the removable [non-citizen] has had his release revoked.") (emphasis added). "Significant likelihood" requires something more than a mere possibility. *See Vu v. Noem*, No. 1:25-cv-01366-KES-SKO, 2025 WL 3114341, at *7 (E.D. Cal. Nov. 6, 2025).

The burden is on ICE to first establish changed circumstances that make removal significantly likely. *See Vu*, 2025 WL 3114341, at *7; *see also Escalante v. Noem*, No. 9:25-cv-00182, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("Imposing the burden of proof on [a non-citizen] each time he is re-detained would lead to an unjust result and serious due process implications.").

Here, ICE cannot meet its burden to show that Petitioner's revocation of release was proper "on account of changed circumstances." *See* 8 C.F.R. § 241.13(i)(2). Respondents do not directly address this requirement, and the Notice of Revocation merely concludes that circumstances have changed for Petitioner, but it does not state reasons or the facts underlying the

8

determination. (ECF No. 20-1 at 1.) Further, Respondents do not identify any event or fact to infer that Petitioner's circumstances changed between his release on June 16, 2024, and the revocation on October 17, 2025. (*Id.* at 26.)

The only new fact before the Court is the Government's intent to remove Petitioner to Mexico, a development that appears to have occurred over two weeks after Petitioner was detained. (ECF No. 20-1 at 3 (Notice of Removal to Mexico).) Without any other facts to rely on, this Court must find there were no changed circumstances in Petitioner's case to warrant the revocation of his release under ICE Regulations. 8 C.F.R. § 241.13(i)(2). Thus, ICE improperly revoked Petitioner's release.

Moreover, as this Court already found above, the Government also failed to meet its burden to show that Petitioner's deportation is significantly likely in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(2) (showing required under ICE Regulations to properly revoke release). The Government did not make the requisite sufficient showing that Petitioner's removal was significantly likely in the foreseeable future based on changed circumstances at the time it revoked his release under 8 C.F.R. § 241.13(i)(2). Accordingly, the Court finds that ICE improperly revoked Petitioner's release in violation of its own regulations and due process.

### b) *Procedures to Revoke Release Under 8 C.F.R. § 241.13(i)(3)*

The ICE Regulations also lay out procedures for revocation of release. 8 C.F.R. § 241.13(i)(3). ICE must provide notice to the noncitizen of the reasons for revocation, "conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the [non-citizen] an opportunity to respond to the reasons for revocation[,]" and provide review of the determination. *Id.*

Petitioner alleges that ICE did not follow these procedures. (ECF No. 1 at 18.) Respondents do not squarely address whether ICE complied with its regulations, but it does provide the Notice of Revocation with generic form language. (ECF No. 20-1 at 1.) There is no indication in the record that Petitioner was afforded an informal interview relating to the revocation of his release. Thus, ICE likely violated its procedures for revocation. *See Phan*, No. 2025 WL 1993735, at * 3–4 (failure to provide informal interview rendered revocation of release

9

unlawful). In fact, in the Notice of Revocation, ICE stated, "[i]f you are not released after the informal interview, you will receive notification of a *new review*, which will occur within approximately three months of the date of this notice." (ECF No. 20-1 at 1 (emphasis added).) By ICE's own statements, a *second* interview should have been conducted within the timeframe Petitioner has been detained. Thus, on the facts currently before this Court, Petitioner is likely to succeed on the merits of his claim that ICE also failed to follow 8 C.F.R. § 241.13(i)(3) for the revocation of his release.

### iii.    Third-Country Removal

Finally, Petitioner argues ICE's new policies and procedures related to third-country removal are unlawful. (ECF No. 1 at 14–16.) Respondents do not address this argument but provides documentation indicating the Government intends to remove Petitioner to Mexico. (ECF No. 20-1 at 3.)

Numerous courts in the Ninth Circuit have held that ICE's current third-country removal policy is unconstitutional and this Court has agreed with those well-reasoned decisions. *See Nguyen v. Charles*, No. 1:25-CV-01592-TLN-CSK, 2025 WL 3492117, at *1 (E.D. Cal. Dec. 4, 2025); *Vu*, 2025 WL 3114341, at *9; *Scott*, 796 F. Supp. 3d at 727–35 ; *Zakzouk v. Becerra*, No. 25-cv-06254-KAW, 2025 WL 2899220, at *4 (N.D. Cal. Oct. 10, 2025); *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *2–3 (W.D. Wash. Oct. 23, 2025). Further, several courts within this Circuit "have found that Due Process requires that the noncitizen [has] the opportunity to actually adjudicate his fear-based claim as to the identified country in front of an immigration judge." *Mendoza v. Lyons*, No. 1:25-CV-01650-DC-SCR (HC), 2025 WL 3514126, at *7 (E.D. Cal. Dec. 8, 2025) (citing *A.A.M. v. Andrews*, No. 1:25-cv-01514-DC-DMC, 2025 WL 3485219, at *9 (E.D. Cal. Dec. 4, 2025) ("Due Process requires that Petitioner receive a full and fair hearing of his fear-based claim in front of a neutral adjudicator. This requirement is not satisfied by simply providing [p]etitioner the time and opportunity to file a discretionary motion to reopen his immigration proceedings."))); *see also Castillo v. Chestnut*, No. 1:25-CV-01296-SAB-HC, 2026 WL 121652, at *10 (E.D. Cal. Jan. 16, 2026); *Abubaka v. Bondi*, No. 25-CV-1889-RSL, 2025 WL 3204369, at *7 (W.D. Wash. Nov. 17, 2025); *Hernandez v. Bondi*, No. 1:25-CV-02020-

10

EPG-HC, 2026 WL 350829, at *8 (E.D. Cal. Feb. 9, 2026).  This Court now adopts the reasoning of those opinions.

Here, the Government notified Petitioner of its intended country of removal and gave Petitioner an interview with an asylum officer.  (ECF No. 20-1 at 3, 5.)  However, there is nothing in the record to indicate that the third-country removal has been adjudicated before an immigration judge.  Thus, without such an opportunity, Petitioner is likely to succeed on his claim that the Government's third-country removal procedures applied here would violate due process.

### B.      Irreparable Harm

Petitioner also establishes he will suffer irreparable harm in the absence of a TRO.  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his immigration proceedings.  Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'"  *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  This factor weighs in Petitioner's favor.

### C.      Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge."  *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations."  *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights."  *Melendres*, 695 F.3d at 1002.

11

Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted). In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's request for injunctive relief and issues a TRO ordering Petitioner's immediate release on the same terms as he was released prior to his detention. *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

## IV.    CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's request for injunctive relief, contained in his habeas petition and construed as a motion for temporary restraining order, is GRANTED;

2. Respondents must IMMEDIATELY RELEASE Petitioner Eduardo V.M. (A # 022-793-002) from custody under the same conditions he was released prior to his current detention. Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing. **Respondents must file a notice certifying compliance with this provision of the Court's Order within two days of the electronic filing date of this Order**;

3. At the time of release, Respondents must return all of Petitioner's documents and possessions;

4. Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present;

5. Respondents and their officers, agents, servants, employees, and persons acting on their

12

behalf in concert or in participation with them is further temporarily ENJOINED and RESTRAINED from removing Petitioner to Mexico until they first allow him a meaningful opportunity to be heard on his fear-based claim before an immigration judge in compliance with due process; Now that Petitioner has Court-appointed counsel, Petitioner may supplement or amend his Petition for Writ of Habeas Corpus **within seven days of the electronic filing date of this Order**;

6. Respondents are ORDERED TO SHOW CAUSE why this Court should not grant the Petition for Writ of Habeas Corpus (and any filed supplement or amendment) and enter judgment in favor of Petitioner. Respondents shall file responsive papers **within ten days of the electronic filing date of this Order**. Petitioner may file a reply, if any, **within thirteen days of the electronic filing date of this Order**. **The parties shall indicate in their briefing whether they request a hearing**. The Court will consider any stipulation and proposed order filed by the parties if they agree to a less demanding briefing schedule;

7. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); and

8. Petitioner's motion to proceed in forma pauperis (ECF No. 10) is GRANTED.

IT IS SO ORDERED.

Date: March 24, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

13